IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

HDI GLOBAL SPECIALITY SE,

    Plaintiff,

v.

                                                    Case No. 2:22-cv-00496-MLG-GBW

TRAVELERS CASUALTY INSURANCE
COMPANY OF AMERICA,

    Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING TRAVELERS'
MOTION FOR SUMMARY JUDGMENT AND DENYING HGS'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff HDI Global Speciality SE ("HGS") and Defendant Travelers Casualty Insurance Company of America ("Travelers") each provided Summit Building & Development, LLC ("Summit"), with commercial liability insurance policies.[1] Doc. 20 at 8-9. The Travelers policy covered Summit's business and operational activities for two apartment complexes located at 6325 and 6345 Reynolds Drive, Las Cruces, New Mexico. Doc. 24 at 2; Doc. 21-1 at 3; Doc. 20-2 at 1. Under that policy, Travelers would "pay those sums that [Summit] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which the insurance applies." Doc. 20-2 at 3; Doc. 21-2 at 1.

Like most insurance policies, coverage provided through the Travelers policy was subject to several exclusions. Of import to this case, the Travelers policy did not apply to bodily injury or property damage arising out of any "real estate development activities" by or on behalf of Summit.

---

[1] HGS issued a claims-made commercial liability policy of insurance to Summit for the period of March 25, 2014, through March 25, 2015, with a retroactive date of March 11, 2014. Doc. 20 at 8. Travelers issued commercial general liability insurance to Summit from April 8, 2011, through April 8, 2016. *Id.* at 9.

Doc. 21-3 at 1 ¶ A. "Real estate development activities" includes "the design, site preparation, construction, marketing or sales of residential, commercial or industrial buildings."[2] *Id.* ¶ C.

The scope and coverage of the Travelers policy became a point of contention after Summit was named in several lawsuits claiming damages for various building defects. In February 2018, Edward and Shawna Sanchez (the "Sanchez" case)[3] filed suit against Summit claiming inter alia negligence, negligence per se, and negligent hiring, retention, and supervision arising from construction defects and damages in their home from Summit's work. Doc. 20 at 11-12; Doc. 1-1 at 6-7. The alleged defects included:

> major structural defects in foundation systems and footings, compromised integrity of the building envelope which allowed water intrusion and resulting damage, physical damage to load bearing beams, walls and columns, defectively formulated and installed stucco systems that are missing essential elements (weep screeds) and are otherwise prone to crack, deteriorate and leak, inadequate or poorly placed concrete which is prone to break, crack, heave and spall, improperly installed windows and doors which leak and are difficult to operate and defective drywall systems that have cracked, separated corner beads, nails popped and/or is separating.

Doc. 1-1 at 4. Another lawsuit, which was initiated by Country Club Estates in the fall of 2018, also alleged various defects arising from construction of a forty-unit apartment complex located in Las Cruces. Doc. 20 at 12-13. Like the Sanchezes, Country Club Estates stated claims for negligence, negligence per se, and negligent hiring, retention, and supervision among others. Doc. 1-3 at 7-9. The alleged defects in that case were alleged to be as follows:

> compromised integrity of building envelope which allowed water intrusion and resulting damage, damage to load bearing beams, walls and columns, defectively

---

[2] The exclusion did not apply to the "repair, maintenance, renovation, alteration or addition" to any existing building owned by Summit. *Id.* ¶ D.

[3] In February 2017, Summit filed suit against a group of subcontractors (the "Corona" case) based on alleged construction defects. Doc. 20 at 12; Doc. 20-8. The Sanchez and Corona cases were eventually consolidated into a single suit. *See* Doc. 1-2.

2

> formulated and installed stucco systems that are missing essential elements (weep screeds) and are otherwise prone to crack, deteriorate and leak, inadequate or poorly placed concrete which is prone to break, crack, heave and spall, improperly installed windows and doors which leak and are difficult to operate and defective drywall systems that have cracked, separated corner beads, nails popped and/or is separating.

*Id.* at 3.

HGS ultimately paid $571,225.74 to settle the Sanchez case and $400,000 to settle the Country Club suit. Doc. 20 at 13. It spent an additional $886,250.04 defending Summit in those cases. *Id.*

Once those suits were finally resolved, HGS tendered a claim for the defense and indemnification arising from the Sanchez case to Travelers, which disclaimed coverage[4] citing the "real estate development activities" exclusion. *Id.* at 14.[5] HGS then initiated this litigation seeking to determine Travelers' obligations under the policy, including questions of subrogation and equitable contribution. Doc. 1. The parties filed competing motions for summary judgment on the matter. HGS argues that the "real estate development activities" exclusion does not apply, and (predictably) Travelers argues to the contrary. Doc. 20 at 15-16; Doc. 21 at 13. After careful consideration of the parties' positions, the Court denies HGS's motion, Doc. 20, and grants Travelers' motion. Doc. 21.

---

[4] The policy did not cover the properties named in the underlying suits, which involved a home at 3030 Agua Ladoso Avenue, Doc. 20-7 at 2, and a forty-unit apartment complex located at 201 Three Crosses Avenue. Doc. 1-3 at 2. HGS contends that, because Travelers did not expressly decline coverage on this basis, it cannot now "mend the hold" to bar coverage. *See* Doc. 29 at 10. Because the Court finds that the exclusion applies, it does not meaningfully address this argument.

[5] It is unclear whether Summit tendered the defense and indemnity of the Country Club lawsuit to Travelers and, if so, whether that claim was denied. While HGS states that Travelers similarly disclaimed coverage for the Country Club lawsuit, Travelers disputes that fact because HGS failed to cite to the record in support. *Id.* at 13; Doc. 24 at 2. In any event, that factual dispute is immaterial to the Court's analysis and decision.

## DISCUSSION

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Interpreting insurance policies and determining policy rights and obligations "are questions of law, appropriate grist for the summary judgment mill." *Merchants Ins. Co. of N.H., Inc. v. U.S. Fid. & Guar. Co.*, 143 F.3d 5, 8 (1st Cir. 1998); *see also Winters v. Charter Oak Fire Ins. Co.*, 4 F. Supp. 2d 1288, 1291 (D.N.M. 1998) ("The construction of an insurance policy is a matter of law which can be decided on summary judgment."). When facts are undisputed, and the sole issue is the application of an insurance policy, the matter is a question of law for the court. *See Benns v. Continental Cas., Co.*, 982 F.2d 461, 462 (10th Cir. 1993); *Gamboa v. Allstate Ins. Co.*, 1986-NMSC-078, ¶ 9, 104 N.M. 756, 758; *Richardson v. Farmers Ins. Co. of Ariz.*, 1991-NMSC-052, ¶ 7, 112 N.M. 73, 74, 811 P.2d 571, 572 ("Absent ambiguity, provisions of contract need only be applied, rather than construed or interpreted."). So, the Court need only apply the provisions of the policy contract to determine whether Travelers must defend and indemnify HGS in the underlying lawsuits. *See Marshall v. Providence Wash. Ins. Co.*, 1997-NMCA-121, ¶ 12, 124 N.M. 381, 383, 951 P.2d 76, 78 (explaining that the duty to defend is determined by comparing the allegations in the complaint to the coverage of the policy).[6]

The relevant complaints allege that Summit was engaged in the business of residential construction contracting and that Summit built the allegedly defective homes and apartments. Doc. 1-1 at 2-4 ¶¶ 2, 18; Doc. 1-3 at 2-3 ¶¶ 2, 11. The Sanchez complaint alleges that Summit also sold the residence to the plaintiffs in that case. Doc. 1-1 at 3 ¶ 14. And the Country Club case alleges

---

[6] Because the parties did not argue that the policy's language was ambiguous or that the "products-completed operations hazard" exclusion applied to bar coverage, the Court cabins its analysis to whether the allegations arise out of Summit's real estate development activities.

that "Summit failed to follow acceptable design and/or building practices" during the course of its "planning, design, development and construction" of the property. Doc. 1-3 at 3 ¶ 16. These responsibilities clearly fall within the ambit of "real estate development activities" which is broad and encompasses the construction, sale, and planning (including site design and preparation) of residential buildings. *See* Doc. 21-3; *see also Northridge Vill., LP v. Travelers Indem. Co. of Conn.*, No. CV 15-1947, 2017 WL 3776621, at *13 (E.D. Pa. Aug. 31, 2017) (concluding that the developers' "planning, design, development, creation, and construction" of a planned community constituted "real estate development activities," which were defined by the insurance policy as "the design, site preparation, construction, marketing or sales of residential, commercial or industrial buildings").[7] The allegations in the underlying complaints arise under the construction, sale, or planning of buildings, so the exclusion applies to bar coverage.

HGS replies that the "scope of the duty to defend in New Mexico is extremely broad" and thus the claimants' allegations as to the "defects and deficiencies in construction" and the negligent "provision of materials by Summit or improper installation of fixtures by Summit" arguably fall within the scope of coverage. Doc. 29 at 3-4, 9 (emphasis omitted). The Court is unpersuaded. From the face of the complaint, these particular allegations arose as part of the overall faulty residential construction, which is excluded as a "real estate development activity" under the policy's terms. It is true that, in New Mexico, an insurance company is obligated to defend when

---

[7] HGS cites an unpublished opinion from the Western District of Washington to support its claim that the exclusion provision does not apply. Doc. 20 at 16 (citing *Travelers Prop. Cas. Co. of Am. v. AF Evans Co.*, No. C10-1110-JCC, 2012 WL 12882902 (W.D. Wash. Dec. 11, 2012)). That district court found the exclusion did not apply where the complaint alleged "defects and deficiencies . . . in the original construction," which it concluded were not caused by the defendant developers' "real estate development activities," *Travelers Prop. Cas. Co. of Am.*, 2012 WL 12882902, at *4, but no comprehensive analysis was provided to support that result. This Court finds *Northridge Village.*, 2017 WL 3776621, more persuasive as the district court's analysis is much more rigorous.

5

(1) the complaint "alleges facts potentially within the coverage of the policy"; (2) the complaint's allegations "are not stated with sufficient clarity so that it can be determined from the face of the complaint whether the action falls within the coverage of the policy"; or (3) "[i]f the duty does not arise from the complaint on its face," where "the insurer is notified of factual contentions or if the insurer could have discovered facts, through reasonable investigation, implicating a duty to defend." *Dove v. State Farm Fire & Cas. Co.*, 2017-NMCA-051, ¶ 11, 399 P.3d 400, 404. But where, as here, the allegations clearly fall outside of the policy's provision, no obligation attaches. *See Bernalillo Cnty. Deputy Sheriffs Ass'n v. Cnty. of Bernalillo*, 1992-NMSC-065, ¶ 8, 114 N.M. 695, 697, 845 P.2d 789, 791. Because Travelers has no duty to defend Summit in the Sanchez and County Club suits, *see id.*, the subrogation and equitable contribution claims are moot.

The Court grants Travelers' motion for the same reasons set forth above: on the undisputed facts, the exclusion applies to bar coverage for the allegations set forth in the underlying claims. Travelers has no duty to defend or indemnify Summit and is entitled to summary judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court denies HGS's motion, Doc. 20, and grants Travelers' motion. Doc. 21. It is hereby ordered that summary judgment is entered in favor of Travelers. HGS's claims are hereby dismissed with prejudice. The Court shall issue a Federal Rule of Civil Procedure 58 judgment separately. It is so ordered.

UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA